BETTY JEAN SEBASTIAN, EMPLOYEE v. MONA WATKINS HAIR STYLING, EMPLOYER; NATIONWIDE MUTUAL INSURANCE COMPANY, CARRIER

No. 7810IC235

(Filed 20 February 1979)

**Master and Servant § 68— hair stylist—sensitivity to chemicals—no compensable disability**

 Plaintiff hair stylist did not have a compensable disability where her incapacity to earn wages was the result of her personal sensitivity to chemicals used in her work rather than an occupational disease.

APPEAL by plaintiff from Order of North Carolina Industrial Commission entered 22 November 1977. Heard in the Court of Appeals on 9 January 1979.

Plaintiff filed a claim for workmen's compensation benefits for an occupational disease. A hearing was held before Commissioner William H. Stephenson and on 4 August 1977 an opinion and award was entered in which Commissioner Stephenson made findings of fact which are summarized and quoted below:

Plaintiff is a forty-two year old woman who has been a hair stylist for more than twenty years and has been employed by Mona Watkins Hair Styling for three years as a hair stylist. In December of 1975, plaintiff began to experience a "breaking-out on her hands," and saw Dr. A. M. Alderman, "who diagnosed her condition as 'contact dermatitis due to strong and various chemicals used in (her) occupation as a beautician.' " Plaintiff was also treated by Dr. W. Stacy Miller, a medical expert specializing in dermatology who "diagnosed her condition as 'hand eczema secondary to chemicals used in hairdressing.' " During the latter part of 1976, plaintiff was exposed to chemicals in her work and sustained a skin disease as a result. On 31 December 1976, plaintiff's skin disease became so acute that she was forced to quit her job as a hair stylist. Thereafter, plaintiff's skin condition "completely cleared up and within thirty days, or on or about January 31, 1977 she was able to return to any type of employment which did not subject her to the handling of chemicals." Since 31 January 1977, plaintiff has applied for several other jobs but she "knows no trade or occupation other than hair styling" and has been unable to find other work. Since 31 January 1977, "plaintiff has been able to work and earn wages and has not been disabled."

Based on the foregoing, Commissioner Stephenson concluded:

1. In the way and manner set out in the Findings of Fact, plaintiff sustained a compensable occupational disease. G.S. 97-53(13).

2. Plaintiff was temporarily totally disabled by reason of her occupational disease from January 1, 1977 through January 30, 1977 and she is entitled to compensation during said period as by law provided. G.S. 97-29.

3. Plaintiff has no compensable disability after January 30, 1977. G.S. 97-2(9); G.S. 97-31.

On 22 November 1977, the North Carolina Industrial Commission entered an Order adopting as its own the findings of fact and award of Commissioner Stephenson. Plaintiff appealed.

*Blanchard, Tucker, Twiggs & Denson, by R. Paxton Badham, Jr., for plaintiff appellant.*

*Young, Moore, Henderson & Alvis, by Charles H. Young, Jr., for defendant appellees.*

HEDRICK, Judge.

The Industrial Commission found that plaintiff's skin condition was compensable as an occupational disease under G.S. § 97-53(13) and awarded her medical expenses plus temporary total disability benefits for a period of thirty days. Defendants did not challenge this conclusion or award and thus no question is presented with respect to it. The Commission, in its Order, stated that "plaintiff has failed to show that her disability after January 31, 1977, was caused by her occupational disease." Plaintiff has excepted to the conclusion based thereon that "[p]laintiff has no compensable disability after January 30, 1977." Plaintiff argues that the "term 'disability' signifies an impairment of wage earning capacity rather than a physical impairment" and that she "has not been able to work [as a hair stylist] or to earn the equivalent wage;" consequently, she continues to have a compensable disability. We disagree.

Plaintiff asserts that the issue is "how to compute damages accruing to a skilled employee who, as a result of an occupational disease, is not able to work at her skill, but is otherwise healthy

and able to work at a non-skilled job." This formulation erroneously assumes the crucial question to be determined: whether plaintiff's incapacity to earn wages is the "result of an occupational disease."

Pursuant to G.S. § 97-53, only certain specifically enumerated "diseases and conditions . . . shall be deemed to be occupational diseases," among which is "(13) Any disease . . . which is proven to be due to causes and conditions which are characteristic of and peculiar to a particular trade, occupation or employment . . ." By virtue of G.S. § 97-52, "[d]isablement . . . of an employee *resulting from an occupational disease* described in G.S. § 97-53 shall be treated as the happening of an injury by accident" and is compensable under the Workmen's Compensation Act. (Emphasis added.) G.S. § 97-54 provides that in "cases of occupational disease 'disablement' shall be equivalent to 'disability' as defined in G.S. 97-2(9)." The definition of "disability" in G.S. § 97-2(9) is "incapacity *because of injury* to earn the wages which the employee was receiving at the time of injury in the same or any other employment." (Emphasis added.)

From the above it is clear that in order to be compensable, plaintiff's "disability" must result from an occupational disease. In the present case, there is no evidence whatsoever that subsequent to 31 January 1977 plaintiff's incapacity to earn wages was the result of an occupational disease; rather, it was the result of her personal sensitivity to chemicals used in her work. We do not believe that the purpose of the Workmen's Compensation Act is to provide benefits for inability to perform a particular type of work due to an individual's susceptibility to disease from that work. The underlying purpose of the Act "is to provide compensation for workmen who suffer disability by accident arising out of and in the course of their employment [or from] those diseases or abnormal conditions . . . the causative origin of which is occupational in nature." *Henry v. A. C. Lawrence Leather Co.*, 234 N.C. 126, 127-28, 66 S.E. 2d 693, 694 (1951).

Plaintiff relies heavily on *Mabe v. N.C. Granite Corp.*, 15 N.C. App. 253, 189 S.E. 2d 804 (1972). In that case, the claimant had worked as a stonecutter with thirty to thirty-five years of experience and was forced to quit because he contracted silicosis from his exposure to silica during his employment. Although he

had only a forty percent medical disability, the Commission found him "fully incapacitated because of silicosis to earn wages through work at hard labor, which is the only work he is qualified to do by reason of his age and education." 15 N.C. App. at 255, 189 S.E. 2d at 806. In that case, it was clear that plaintiff's incapacity to earn wages was the result of his having silicosis, which in turn was a result of his work. Furthermore, there is a radical difference between silicosis and the skin condition of plaintiff in the present case. In *Singleton v. D. T. Vance Mica Co.*, 235 N.C. 315, 324, 69 S.E. 2d 707, 713 (1952), the Court stated:

> Silicosis is an inflammatory disease of the lungs due to the inhalation of particles of silicon dioxide. It is incurable and is one of the most disabling occupational diseases because it makes the lungs susceptable to other infection, particularly tuberculosis. According to the textbook writers, it has been definitely determined that the removal of a man, who has silicosis, from silica exposure, does not stop the progress of the disease at once, but that fibrotic changes continue to develop for another one or two years.

In contrast, plaintiff's skin condition had completely cleared up within one month of her terminating her employment as a hair stylist. While it may be true that plaintiff's skin disease could recur if she returned to her previous job, there is no evidence of any continuing disability as a result of a disease contracted in the course of employment as is the case with silicosis. Therefore, she is not entitled to disability compensation payments for her susceptibility to the skin disease.

For the reasons stated above, the Order appealed from is affirmed.

Affirmed.

Judges VAUGHN and CLARK concur.