The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Chrystal Stanback. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
At the time of the alleged injuries by accident on September 24, 1992, March 12, 1993, February 5, 1994 and July 4, 1994, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act. The employer-employee relationship existed between plaintiff and defendant-employer on the dates of alleged injuries by accident. Georgia Pacific Corporation was self-insured on the dates of the alleged injuries by accident. Mr. Whaley was out of work and paid temporary total benefits for the following periods:
11/26/93 — 12/15/93
3/23/94 — 4/27/94
5/18/94 — 5/24/94
Mr. Whaley received 26 weeks of short-term disability, from 7/6/94 — 1/10/95, from a noncontributory plan.
 ***********
The Full Commission finds facts as follows:
 FINDINGS OF FACT
1. The plaintiff was 35 years of age when he began his employment with Georgia Pacific. He was employed from March 27, 1984 until July 5, 1994. From 1989 until the end of his employment, he was employed as a log in-feed technician. He sat in a control booth and operated a series of controls separating logs. He had to climb about 70 steps. Whenever logs were stuck, he would have to go down to help move them and assist in cleaning up.
2. On September 24, 1992, the plaintiff suffered an admittedly compensable back injury. He was moving a box of flaker knives to a worktable and felt low back pain. He continued to work. The accident investigation report of Georgia Pacific stated "possibly lifted box incorrectly causing the injury. Employee was doing a task he rarely does." The parties further stipulated for the record that he received temporary total disability benefits from November 26, 1992 through December 15, 1992 for this back injury.
3. On March 12, 1993, the plaintiff was struck in the back by a door that vibrated off during a logjam. Again, he continued to work. After this he was paid temporary total disability benefits from March 23, 1993 through April 27, 1993, and the company related it to his September 24, 1992 injury.
4. On February 5, 1994, the plaintiff was shoveling fines out of the infeed dike when his right foot slipped and he fell, thus aggravating a previous injury to his lower back. According to the accident investigation report of Georgia Pacific, the "area was slippery due to hydraulic oil and rain water in the dike". Again, Mr. Whaley was paid temporary total benefits from May 15, 1994 through May 24, 1994, and it was related to his original September 24, 1992 injury.
5. All of the above times out of work were admitted as temporary total periods from a compensable injury in the records of Georgia Pacific.
6. Mr. Whaley first sought medical attention with Goshen Medical Center on November 23, 1993. Mr. David Reeves, a physician's assistant, diagnosed chronic low back pain and referred him to Dr. Ira Hardy. Dr. Hardy began to see him on December 13, 1993. An MRI scan revealed a broad-based disc protrusion predominantly right sided at the L4-L5 disc, which is the second disc from the bottom of the spine. Dr. Hardy also noted that on physical examination Mr. Whaley's back was straight. On March 23, 1994, he was seen again by Dr. Hardy because "he had slipped at work, and developed a recurrent right back and right hip pain". On exam, he noted that Mr. Whaley had lost his lumbar curve.
7. On April 25, 1994, Mr. Whaley was seen again by Dr. Hardy with back and right hip pain. Dr. Hardy thought he could return to work at light activity and he gave him a light duty job requirement form to return to non-labor work. On May 17, 1994, he was seen for low back pressure radiating into the buttocks. A myelogram on May 25, 1994, showed "rather marked degenerative disc disease at the L4-L5 level", which was the second disc from the bottom. His L5 vertebrae was sacralized, which means that what normally would be a moveable vertebrae was attached to his sacrum, so that the L4-L5 disc was the first movable disc. Dr. Hardy released him only to continue light duty non-physical labor.
8. On July 4, 1994, plaintiff was working a twelve (12) hour shift, which was the last day he worked. The infeed was closed down and plaintiff was working maintenance cleaning up, which was not his usual job, was heavier work that his usual job and he had been restricted by his treating physician to light duty. Plaintiff began work at 7 p.m. that night and he began to clean out underneath the swing saw. He put his hand up on the beam to pull himself up and felt a sharp feeling in the low part of his back. This constituted a specific traumatic incident of the work assigned and also was an injury by accident. (Defendant's evidence to the contrary is found not credible.) He told a co-worker, David Smith, that he hurt his back and that he was going to the supervisor's office. He talked to the supervisor, left to go home early before the shift was over, and got into a hot tub of water.
9. Dr. Hardy rendered an opinion, and the Full Commission finds as facts, that the various on-the-job traumas that he suffered as outlined above, including the July 4, 1994 incident, could have singularly or in combination have been a substantial factor in either causing his degenerative disc to become symptomatic or in aggravating his condition where it became symptomatic and impaired him from doing his normal job. He concurred with the opinion of Dr. Jack Drummed, which the Full Commission finds as a fact, that because of his degenerative disk disease exacerbated by on-the-job traumas including the one on July 4, 1996, plaintiff was likely never to return to work. Dr. Hardy's prior letter to Defendant's case manager and Defendant's other evidence to the contrary are found not credible in light of Dr. Hardy's later deposition testimony.
10. James Senters worked at Georgia Pacific on the night of July 4, 1994, and testified that Mr. Whaley left before the shift was over and that he saw Mr. Whaley talking to the supervisor, Leonard Byrd, in his office before he left. Another employee, David Smith, who was working at Georgia Pacific on July 4, 1994, testified that he and Mr. Whaley worked fairly close together on the clean-up job that night. He stated that he heard Mr. Whaley let out a couple of words, and that he himself asked plaintiff if he was all right, and saw plaintiff was holding his back. He stated that plaintiff's appearance was that he was obviously in pain and that he could tell that he was hurting. Michael Phillips, Safety Officer, testified that Mr. Whaley left between 2 a.m. and 4 a.m. on the morning of July 5, 1994, and that he received a call from Leonard Byrd stating plaintiff wanted to go home because it was unbearable for him to perform any more work and that he could not take it any more.
11. On July 6, 1994, plaintiff went to the office at Georgia Pacific and was told he would have to be cleared to return to work by Dr. Jack Drummond. A stipulated medical report from Dr. Jack Drummond, dated August 1, 1994, stated that the patient would never be able to return to work and gave a diagnosis of degenerative disc disease. Mr. Whaley never did return to Georgia Pacific.
 ***********
Based upon the findings of fact, The Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff suffered both an injury by accident and a specific traumatic incident on July 4, 1996, which has left him unable to work. N.C. Gen. Stat. § 97-2 (6).
2. A pre-existing condition aggravated by a subsequent trauma resulting in disability is deemed compensable. Kendrick v.City of Greensboro, 80 N.C. App. 183, 341 S.E.2d 122 disc. rev. den. 317 N.C. 355, 346 S.E.2d 500 (1986).
3. Where Plaintiff's work-related accident contributed "in some reasonable degree" to his disability, then he is entitled to compensation. When industrial injury precipitates disability from a latent prior condition, such as heart disease, cancer, back weakness and the like, the entire disability is compensable . . ."Pruitt v. Knight Publishing Co., 27 N.C. App. 254, 258,218 S.E.2d 876, 879 (1975), reversed on other grounds, 289 N.C. 254,221 S.E.2d 355 (1976), quoting 2 A. Larson, Workmen's Compensation Law. Sec. 59.20, pp. 10-270-273 (1972).
4. Plaintiff is entitled to temporary total disability benefits from July 5, 1994 and continuing at a rate of $283.43 per week until further order of the Industrial Commission. N.C. Gen. Stat. § 97-29.
5. To the extent the same is reasonably designed to attempt to effect a cure of, provide needed relief from and or lessen the period of disability associated therewith, plaintiff is entitled to all reasonable and necessary medical expenses incurred or to be incurred in the future as a result of his back injuries. N.C. Gen. Stat. § 97-25.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
 AWARD
1. Defendant shall pay Plaintiff temporary total disability benefits from July 5, 1994 and continuing at a rate of $283.43 per week until further order of the Industrial Commission.
2. To the extent the same is reasonably designed to attempt to effect a cure of, provide needed relief from and or lessen the period of disability associated therewith, Defendants shall pay all reasonable and necessary medical expenses already incurred or to be incurred in the future by plaintiff as a result of his back injuries.
3. An attorney's fee of 25% is hereby approved for plaintiff's counsel. Defendants shall pay every fourth check to counsel. The accrued compensation shall be paid in one lump sum, including interest at the rate of 8 per cent per annum from September 6, 1995 until paid.
4. Defendants are entitled to a credit of benefits paid to plaintiff from July 6, 1994 to January 10, 1995 on a week-by-week basis.
5. Defendants shall pay the costs.
 S/ ____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ _________________ CHRISTOPHER L. SCOTT COMMISSIONER
DISSENTING:
S/ _________________ RENEE C. RIGGSBEE COMMISSIONER
Filed Date: 3/24/98